**SINGH, SINGH & TRAUBEN, LLP**
**THOMAS K. RICHARDS** (SBN: 310209)
trichards@singhtraubenlaw.com
**JUSTIN R. TRAUBEN** (SBN: 278705)
jtrauben@singhtraubenlaw.com
400 S. Beverly Drive, Suite 240
Beverly Hills, California 90212
Tel: 310.856.9705 | Fax: 888.734.3555

***Attorneys for Plaintiff***
HARVEST AID, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HARVEST AID, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN PAUL, an individual, ECHO BRIDGE ACQUISITIONS CORP LLC, a Delaware limited liability company, and SP RELEASING, LLC, a California limited liability company,<br><br>Defendants. | Case No.: 2:21-cv-4154<br><br>**COMPLAINT FOR:**<br><br>1. **Copyright Infringement (17 U.S.C §§ 501; *and***<br>2. **Circumvention of Copyright Protection Systems (17 U.S.C. § 1201)** |

Plaintiff, Harvest Aid, LLC ("**Harvest Aid**" or "**Plaintiff**"), by and through its undersigned counsel, hereby files its Complaint against Defendants Steven Paul ("**Paul**"), Echo Bridge Acquisitions Corp LLC ("**Echo Bridge**") and SP Releasing, LLC ("**SP Releasing**") (collectively, "**Defendants**") and, in support thereof, states as follows:

## NATURE OF ACTION

1. Through this Complaint, Plaintiff seeks to recover from Defendants damages, injunctive relief, and other remedies provided for by law, for copyright

infringement arising under 17 U.S.C.A. §§ 101, *et seq* (referred to herein as the "**Copyright Act**") arising from Defendants' willful, recorded, and conspicuous acts of copyright infringement of Plaintiff's original motion picture entitled *I Believe* (the "**Picture**").

## THE PARTIES

2. Plaintiff Harvest Aid is a limited liability company organized under the laws of the State of California.

3. Upon information and belief, Defendant Paul is an individual residing in Los Angeles County, California.

4. Upon information and belief, Defendant Echo Bridge is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Los Angeles County, California.

5. Upon information and belief, Defendant SP Releasing is a limited liability company organized under the laws of the State of California.

6. In addition, Plaintiff is informed and believes, and on that basis alleges, that Defendant Paul is the "alter egos" of Defendants Echo Bridge and SP Releasing and that there exists, and at all times mentioned herein existed, a unity of interest and ownership between Defendants Paul, Echo Bridge and SP Releasing such that any individuality and separateness between all Defendants have ceased and Defendant Paul controls and/or controlled the business and activities of Echo Bridge and SP Releasing.

7. Plaintiff is informed and believes, and on that basis alleges, that at all times herein mentioned, Echo Bridge and SP Releasing were and are mere shells, instrumentalities and conduits through which Paul carried on his business in the corporate name, exactly as he would have had there been no corporations at all, exercising complete control and dominance over such businesses to the point where any individuality or separateness between Defendants Paul, Echo Bridge and SP Releasing does not, and at all times herein mentioned, did not, exist.

8. In addition, upon information and belief, Defendant Paul further comingled

and continues to comingle his assets with Echo Bridge and SP Releasing, controlled and continues to control Echo Bridge and SP Releasing's finances in their entirety, treated and treats Echo Bridge and SP Releasing's assets as his own, and further engaged and engages in such zealous controlling conduct towards Echo Bridge and SP Releasing such that they remain nothing more than a mere instrumentality of Defendant Paul.

9. Upon information and belief, Echo Bridge and SP Releasing are and were extremely undercapitalized as all, or most, of the revenues and monies yielded from Echo Bridge and SP Releasing's business were and have been drained from Echo Bridge and SP Releasing and transferred to Paul personally and for Paul's personal use and, further, Paul has and continues to use the assets of Echo Bridge and SP Releasing for his own personal use.

10. Plaintiff is informed and believes, and on that basis alleges that Echo Bridge and SP Releasing are unable to satisfy any judgment against them.

11. Adherence to the fiction of the separate existence of Paul as an individual separate and distinct from Echo Bridge and SP Releasing would permit an abuse of the corporate privilege and would sanction fraud or promote injustice in that Paul might escape liability for the causes of action set out herein and would permit an abuse of the corporate privilege and produce an inequitable result.

12. Plaintiff is informed and believes, and on that basis alleges, that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, and aided and abetted the conduct of all other Defendants.

## JURISDICTION AND VENUE

13. This is a civil action against Defendants for their acts of copyright infringement in violation of the United States Copyright Act, 17 U.S.C. § 101 *et seq*. This Court has subject matter jurisdiction over the copyright infringement under 28 U.S.C. § 1331, 17 U.S.C. § 501(a), and 28 U.S.C. § 1338 in that the controversy arises under the Copyright Act (17 U.S.C. 101 *et seq*.), which is within the exclusive

jurisdiction of federal courts.

14. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. §1400(a) in that the claim arises in this Judicial District, the Defendants transacts business in this Judicial District, and the injury suffered by Plaintiff took place in this Judicial District.

## FACTUAL BACKGROUND

15. Plaintiff Harvest Aid is a small independent production company that produces faith based motion pictures.

16. In or around 2017, Plaintiff produced the original motion Picture entitled *I Believe*.

17. The Picture was registered with the Copyright Office in the name of Harvest Aid on January 24, 2017, receiving Registration Number PAu 3-897-191.

18. On or around July 21, 2017, Harvest Aid entered into a distribution agreement with Wax Works, Inc. ("**Wax Works**") in connection with the public distribution of the Picture (the "**Wax Works Distribution Agreement**").

19. Pursuant to the Wax Works Distribution Agreement, Harvest Aid was directly and exclusively responsible for the replication (*i.e.* manufacturing) of all DVDs of the Picture.

20. Harvest Aid did not grant Wax Works (or any other party) the right to reproduce the Picture or replicate DVDs of the Picture.

21. To manufacture authentic DVDs of the Picture, Harvest Aid directly retained the services of The ADS Group as its replicator of choice which, to date, has manufactured exactly 39,400 authentic DVDs of the Picture for delivery to Defendants.

22. Each of the DVDs manufactured by The ADS Group includes a recognizable insignia to reflect that it was authentically manufactured by The ADS Group.

23. On or around January 17, 2018, Wax Works entered into a sub-distribution agreement with Defendant SP Releasing to distribute DVDs of the Picture exclusively to

Walmart, Inc. ("**Walmart**") brick and mortar stores (the "**Sub-Distribution Agreement**").

24. Wax Works did not have the right, and nor did it grant SP Releasing the right, to distribute DVDs of the Picture to any retailer or entity other than Walmart.

25. Wax Works did not have the right, and nor did it grant SP Releasing the right, to replicate and/or manufacture DVDs of the Picture.

26. In or around November 2017, consistent with the Sub-Distribution Agreement, and with the DVDs authentically manufactured by The ADS Group at the express direction of Harvest Aid, Defendants distributed DVDs of the Picture to Walmart.

27. After the first batch of DVDs sold out, Defendants requested more DVDs from Wax Works, which relayed the order to Harvest Aid which then, in turn, caused additional DVDs to be manufactured and/or delivered by The ADS Group to Defendants for distribution through Walmart.

28. Thereafter, without authorization, Defendants, and each of them, began to manufacture unauthorized copies of the Picture for distribution through Walmart (and potentially other retailers).

29. Specifically, even though Harvest Aid only provided 39,400 authentic DVDs of the Picture to Defendants, Defendants' own accounting records reflect that Defendants shipped no less than 46,458 DVDs of the Picture to Walmart.

30. Further reflecting Defendants' willful copyright infringement, at least 6,000 counterfeit DVD copies of the Picture were returned from Walmart to Defendants, which counterfeit DVDs Defendants thereafter re-sold to at least one unauthorized sub-distributor, Jax Distribution ("**Jax**").

31. Specifically, in or around October 2019, Jax purchased ten (10) pallets of DVDs from Defendant Echo Bridge's warehouse located at 3089 Airport Dr., La Crosse, Wisconsin 5460. A true and correct copy of a declaration of an authorized representative of Jax is attached hereto as **Exhibit "A"**.

32. Each pallet Jax purchased from Echo Bridge contained approximately 2,000 DVDs.

33. The agreed upon price was $0.15 per DVD, with a total purchase price of approximately $3,000.00.

34. Jax retained the services of the shipping company Uni-Shippers to transport the 10 pallets of DVDs from Echo Bridge's warehouse to Jax's offices in Hermitage, Tennessee.

35. Among several other titles, the pallets of DVDs Echo Bridge shipped to Jax's offices included thousands of copies of the Picture, each counterfeit.

36. The DVDs were shipped in boxes labeled "Wal-Mart" and "RETURN FOR CREDIT."

37. The DVD boxes further included stickers that read "OVSTK" (*i.e.* overstock) and "Echo Bridge Acquisition".

38. Upon Jax's receipt of Plaintiff's notification that the DVDs of the Picture Jax had purchased from Echo Bridge were not authorized for further distribution, Jax shipped hundreds of copies of the Picture in its possession to Plaintiff.

39. Upon inspection of these DVDs that Defendant Echo Bridge had sold to Jax, Plaintiff was able to confirm that each of the DVDs of the Picture Jax had purchased from Defendant Echo Bridge was counterfeit (the "**Counterfeit DVDs**").

40. None of the Counterfeit DVDs had the authentic insignia to reflect that it was manufactured by The ADS Group.

41. Each of the Counterfeit DVDs was of readily apparent inferior quality, with both the image on the top of the DVD and the image on the case of the DVD being of poorer quality and brightness than the authentic DVDs of the Picture.

42. Upon further inspection, it was revealed that the Counterfeit DVDs were manufactured through a program called "DVDFab", which copied the authentic DVDs in such a manner as to bypass and remove the authentic DVDs' Content Scramble System, which serves to deter illicit copying.

43. The Counterfeit DVDs were also missing two codes assigned by the International Federation of Phonographic Industries.

44. These two codes, one for the mastering system and the other for the specific replication line, were each removed and missing in the Counterfeit DVDs.

45. All conditions precedent to the bringing of this action have occurred, been waived or performed.

**COUNT I**
**COPYRIGHT INFRINGEMENT (17 U.S.C §§ 501, *et seq*.)**
**(*By Plaintiff as Against All Defendants*)**

46. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 45 as if fully set forth herein.

47. Plaintiff has satisfied the federal statutory requirements to maintain suit for copyright infringement under 17 U.S.C. § 411(a).

48. Plaintiff has paid the requisite fees and deposited a copy of the Picture with the Copyright Office in proper form.

49. Plaintiff obtained a Certificate of Registration for Picture with Registration No. PAu 3-897-191.

50. Plaintiff independently created the Picture and is and has always been the sole and exclusive owner of the Picture and the corresponding copyright registrations.

51. As the lawful owner of the copyrights in the Picture, Plaintiff is entitled to, *inter alia*, the exclusive rights to do and to authorize the reproduction of the copyrighted work and the distribution of copies of the copyrighted work to the public by sale or other transfer of ownership. 17 U.S.C. § 106.

52. Defendants have infringed Plaintiff's copyrights in the Picture by copying, publishing, modifying and distributing infringing materials in the United States, including in connection with Defendants' unauthorized manufacture and distribution of counterfeit copies of the Picture.

53. Plaintiff never granted Defendants a license to manufacture copies of the

Picture.

54. Defendants never maintained a license to distribute counterfeit copies of the Picture.

55. Defendants also never maintained a license to distribute authentic copies of the Picture to any person or entity other than Walmart.

56. Defendants acted with willful disregard of Plaintiff's copyright ownership rights.

57. Defendants manufactured, reproduced, distributed, altered and commercially exploited unauthorized counterfeit copies of Plaintiff's Picture for significant gain.

58. Upon information and belief, Defendants manufactured or caused a third-party to manufacture inferior counterfeit DVD copies of the Picture for distribution to Walmart and other retailers, including Jax.

59. Upon information and belief, Defendants have collected fees and profits derived from their unauthorized reproduction, distribution, and exploitation of the Picture.

60. As a result of their infringing conduct, Defendants are liable to Plaintiff for copyright infringement and Plaintiff is entitled to recover damages, which include Plaintiff's actual damages and any and all profits Defendants have garnered as a result of their wrongful conduct. 17 U.S.C. § 504.

61. The said wrongful acts of Defendants have caused great injury to Plaintiff, and unless the Court restrains Defendants from further commission of said acts, Plaintiff will suffer irreparable injury, for all of which it is without an adequate remedy at law. Plaintiff seeks a declaration that Defendants are infringing Plaintiff's copyrights and an order under 17 U.S.C. § 502 enjoining Defendants from any further infringement of Plaintiff's copyrights.

62. Plaintiff is entitled to injunctive relief and to an order impounding any and all of Defendants' infringing materials as Defendants' wrongful conduct is continuing in

nature and Defendants' acts have caused and will cause substantial and irreparable injury to Plaintiff unless such acts are restrained by this Court.

63. The foregoing conduct on the part of Defendants constitutes willful copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*., and Defendants' infringing conduct has been, and continues to be, deliberate, willful and in intentional violation of Plaintiff's rights for the purpose of commercial gain and was done so knowingly and with utter and reckless disregard for Plaintiff's rights.

64. As a result of the acts of Defendants alleged herein, Plaintiff has suffered and is suffering substantial damage to its business in the form of diversion of trade, loss of profits, injury to goodwill and reputation, and the dilution of the value of its rights, all of which are not yet fully ascertainable.

65. By reasons of the foregoing acts of copyright infringement, Plaintiff has sustained substantial damages in an amount to be determined at trial.

66. In the alternative, Plaintiff is entitled to statutory damages for willful infringement in an amount to be fixed by the Court.

**COUNT II**

**Circumvention of copyright protection systems (17 U.S.C. § 1201)**

**(*By Plaintiff as Against All Defendants*)**

67. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 66 as if fully set forth herein.

68. Section 1201(a)(1)(A) of the DMCA provides in pertinent part that "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under [the Copyright Act]." 17 U.S.C. § 1201(a)(1)(A).

69. Plaintiff uses technological protection measures (or "**TPMs**") to effectively control access to, and to protect the exclusive rights of copyright in its Picture as protected by the Copyright Act.

70. On information and belief, Defendants circumvented the TPMs of the authentic DVDs of the Picture and, therefore, Defendants have violated 17 U.S.C. §

1201(a)(1)(A).

71. This circumvention in violation of the DMCA constitutes a separate and independent unlawful act and claim for relief from those stated in the first cause of action.

72. Plaintiff has sustained and will sustain actual damage as the result of Defendants' DMCA violations, including, among other things, damages to the value of the Picture and the reduction in Plaintiff's goodwill in the Picture. 17 U.S.C. § 1203(c)(2). Plaintiff is also entitled to Defendants' profits from their violations of the DMCA. (*Id.*).

73. Alternatively, and at their election, Plaintiff is entitled to an award of the maximum statutory damages as permitted by the DMCA. *Id.* § 1203(c)(3).

74. Defendants' conduct, unless enjoined and restrained by this Court, will cause immediate and irreparable injury to Plaintiff, which has no adequate remedy at law. Pursuant to 17 U.S.C. § 1203(b)(2), Plaintiff is entitled to preliminary and permanent injunctions prohibiting Defendants' further violations of § 1201.

75. Plaintiff is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 1203.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Harvest Aid, LLC respectfully requests that this Court enter judgment in its favor and as against Defendants Steven Paul, Echo Bridge Acquisitions Corp LLC and SP Releasing, LLC, jointly and severally, as follows:

1. For an order prohibiting and permanently enjoining Defendants, their officers, agents, servants, employees, representatives, and attorneys, and all persons in active concert or participation with them, from further manufacturing, copying, reproducing, displaying, promoting, advertising, distributing, or selling, or engaging in any other form of dealing or transaction that infringe, contributorily infringe, vicariously infringe, or induce infringement of Plaintiff's copyrights in the Picture;

2. For an order requiring Defendants to account for all revenues derived from their exploitation of the Counterfeit DVDs;

3. For the entry of a seizure order directing the seizure and impounding of all items possessed, owned or under the control of Defendants, their officers, agents, servants, employees, representatives and attorneys, and all persons in active concert or participation with them, which infringe upon Plaintiff's copyrights in the Picture;

4. For actual damages and disgorgement of all profits derived by Defendants from their acts of copyright infringement and to reimburse Plaintiff for all damages suffered by Plaintiff by reasons of Defendants' acts, pursuant to 17 U.S.C. §§ 504 (a)(1) & (b) and 17 U.S.C. § 1203(c)(2) or awarding statutory damages in an amount to be fixed by the Court under 17 U.S.C. §504;

5. For costs and interest pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1203(b)(4);

6. For reasonable attorneys' fees incurred herein pursuant to 17 U.S.C. §§ 505 and 1203; *and*

7. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

**DATED**: May 18, 2021

Respectfully submitted,

**SINGH, SINGH & TRAUBEN, LLP**
**JUSTIN R. TRAUBEN**

By: ______________________________
Justin R. Trauben

***Attorneys for Plaintiff***
HARVEST AID, LLC